

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*United States Courthouse*
*300 Quarropas Street*
*White Plains, New York 10601*

October 19, 2017

**BY ECF**

The Honorable Kenneth M. Karas
United States District Judge
Southern District of New York
300 Quarropas Street
White Plains, NY 10601

Re:     *United States* **v.** *Nicholas Tartaglione*, **S3 16 Cr. 832 (KMK)**

Dear Judge Karas:

The Government respectfully submits this letter in opposition to defendant Nicholas Tartaglione's letter motion seeking immediate additional disclosures from the Government.  As set forth in greater detail below, the Government has complied with its disclosure obligations, and there is no basis for ordering additional disclosure at this stage.  Accordingly, the defense motion should be denied.

### Background

Defendant Tartaglione was indicted and arrested on December 19, 2016 for participating in a conspiracy to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. §§ 846, 841(b)(1)(A), and for the murders of Martin Luna, Urbano Santiago, Miguel Luna, and Hector Gutierrez in furtherance of that narcotics enterprise, in violation of 21 U.S.C. § 848(e).  On or about June 1, 2017, a superseding indictment was unsealed charging Tartaglione and a new co-defendant, Joseph Biggs, with one count of conspiracy to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. §§ 846, 841(b)(1)(A); four counts of murder in furtherance of that enterprise, in violation of 21 U.S.C. § 848(e); three counts of use of a firearm resulting in death, in violation of 18 U.S.C. § 924(j); one count of kidnapping conspiracy, in violation of 18 U.S.C. § 1201(c); four counts of kidnapping resulting in death, in violation of 18 U.S.C. § 1201(a); and four counts of Travel Act murder, in violation of 18 U.S.C. § 1952.  All of the substantive counts include aiding and abetting charges.

In summary, the Government believes the following based on the evidence currently available to it:  Beginning in or about 2015, Tartaglione became involved in a conspiracy to distribute more than five kilograms of cocaine.  This conspiracy involved other individuals, including one of the murder victims, Martin Luna.  During the course of the conspiracy,

October 19, 2017
Page 2 of 6

Tartaglione came to believe that Martin Luna had stolen money intended for the purchase of large quantities of cocaine. In response, Tartaglione and other co-conspirators engaged in an escalating series of tactics attempting to force Luna to return or repay the money.

At some point, Luna began hiding from Tartaglione and his co-conspirators. In response, Tartaglione and others hatched a plan to lure Luna under false pretenses to the Likquid Lounge—a bar owned at that time by Tartaglione's brother—where they would confront Luna and kill him if he did not repay the money. On April 11, 2016, Luna was lured to the bar. Because he did not know the true nature of the meeting, he brought with him his two nephews— Urbano Santiago and Miguel Luna—and his friend Hector Gutierrez. After the four victims arrived at the bar, they were held captive by Tartaglione and his co-conspirators, who did not permit the victims to leave.

Later that afternoon, Martin Luna was killed at the bar while Tartaglione was present. The other three victims – Urbano Santiago, Miguel Luna, and Hector Gutierrez – were still alive and held captive by Tartaglione and his co-conspirators at the bar. While those three victims were still alive and held captive, Tartaglione left the bar to drive Martin Luna's body to Tartaglione's ranch in Otisville, New York. After Tartaglione left with the first body, Urbano Santiago, Miguel Luna, and Hector Gutierrez were shot and killed at the bar. The co-conspirators then transported those three bodies to Tartaglione's ranch, where all four victims were buried in a mass grave.

Based on the evidence it anticipates presenting at trial, the Government maintains that although Tartaglione was not present during the latter three murders, he is nevertheless responsible for them. In particular, the Government expects to prove at trial that Tartaglione is liable for their deaths as an aider and abettor, under a felony murder theory, pursuant to death resulting statutes, and through *Pinkerton* liability.

The discovery provided to date in this case includes, among other things, surveillance video from outside the bar, cell site data, phone records, license plate reader records, vehicle registrations, DNA evidence, ballistics evidence, text messages among co-conspirators, and items seized during the execution of numerous search warrants. The Government also has provided the applications for numerous search warrants and historical cell site orders. These applications include summaries of witness statements, presented with other non-testimonial evidence to lay out much of the Government's theory of this case.

Further, the Government has made itself available to defense counsel to discuss its view of the case. Although the Government has declined to provide witness identities or statements beyond those included in warrant applications, the Government has laid out much of its theory and has taken particular care to notify defense counsel of the portions of its theory that are favorable to Tartaglione.

On or about May 15, 2017, the Government met with defense counsel for Tartaglione to convey its theory of the case and to assist both in the defense's preparation of a mitigation submission related to the capital case review process and in their preparation for trial. More specifically, during that meeting, the Government emphasized that it did not intend to argue at trial that Tartaglione had fired the gun that killed Urbano Santiago, Miguel Luna, and Hector

October 19, 2017
Page 3 of 6

Gutierrez.  Following that meeting, the Government concluded that it would be prudent to clarify to defense counsel that beyond not being the shooter, the Government specifically believes that Tartaglione was not present at the bar when Santiago, Miguel Luna, and Gutierrez were shot and killed.  The Government wrote a letter providing that clarification on July 20, 2017.

The defense responded on or about August 23, 2017 by requesting a detailed account of each piece of evidence leading to the Government's conclusion that Tartaglione was not present when the three victims were shot and killed.  By letter dated September 15, 2017, the Government declined to provide such a disclosure.  The Government further noted that it was not aware of any authority requiring it to make such a disclosure, whether under *Brady* or *Kyles*.

### **Applicable Law**

Rule 16 of the Federal Rules of Criminal Procedure "sets out the rights of an indicted criminal defendant to production of documents and objects from the government."  *United States* v. *Urena*, 989 F. Supp. 2d 253, 158 (S.D.N.Y. 2013).  Rule 16, however, does not "authorize the discovery or inspection of statements made by prospective government witnesses except as provided in 18 U.S.C. § 3500."  Fed. R. Crim. P. 16(a)(2).  "Section 3500 'is the exclusive vehicle for disclosure of statements made by government witnesses.'"  *Urena*, 989 F. Supp. 2d at 258 (quoting *United States* v. *Percevault*, 490 F.2d 126, 128-29 (2d Cir. 1974).  "[U]nlike Rule 16, which provides for pre-trial disclosure of the materials covered, § 3500 requires disclosure only 'after the witness has testified at trial.'"  *Id.* at 258-59 (quoting *Percevault*, 490 F.2d at 129).  Of course, as the Court is aware, the Government typically produces § 3500 material in advance of a witness's testimony, and indeed in advance of the start of trial, on a date set by the Court.

Pursuant to the Due Process Clause of the United States Constitution, the Government has a duty to disclose favorable evidence to the accused where such evidence is "material either to guilt or to punishment." *See Brady* v. *Maryland*, 373 U.S. 83, 87 (1963); *Kyles* v. *Whitley*, 514 U.S. 419, 437-38 (1995).  Evaluation of alleged *Brady* obligations generally takes a retrospective view "by reference to the likely effect that the suppression of particular evidence had on the outcome of the trial."  *In re United States (U.S. v. Coppa)*, 267 F.3d 132, 140 (2d Cir. 2001).  "The government therefore has a so-called '*Brady* obligation' only where non-disclosure of a particular piece of evidence would deprive a defendant of a fair trial."  *Id.*; *see also United States* v. *Agurs*, 427 U.S. 97, 104 (1976) ("A fair analysis of the holding in *Brady* indicates that implicit in the requirement of materiality is a concern that the suppressed evidence might have affected the outcome of the trial.").  In this analysis, any withheld evidence must be considered "in the context of the entire record," *Agurs* 427 U.S. at 112, considering the "cumulative effect" of the evidence's absence, *Turner* v. *United States*, 137 S. Ct. 1885, 1895 (2017).

The purpose of this rule "is not to displace the adversary system as the primary means by which truth is uncovered" and accordingly does not require a prosecutor "to deliver his entire file to defense counsel."  *United States* v. *Bagley*, 473 U.S. 667, 675 (1985).  Rather, "the question is whether 'the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.'"  *Strickler* v. *Greene*, 527 U.S. 263, 290 (1999) (quoting *Kyles*, 514 U.S. at 435).  Where withheld evidence is, for example, "largely cumulative" of other evidence that the defense "already ha[s]," the Supreme Court has held that

October 19, 2017
Page 4 of 6

its non-disclosure does not violate constitutional disclosure obligations. *Turner*, 137 S. Ct. at 1894.

*Brady* material "must be disclosed in time for its effective use at trial." *Coppa*, 267 F.3d at 142. The Second Circuit has expressly rejected a rule requiring immediate disclosure of exculpatory material upon demand by the defense. *See id.* at 144 ("In nearly four decades of jurisprudence, the Supreme Court has never suggested that the reference reflected a constitutional duty to disclose *Brady* and *Giglio* materials as soon after indictment as such materials are requested"). Rather, "as long as a defendant possesses *Brady* evidence in time for its effective use, the government has not deprived the defendant of due process of law simply because it did not produce the evidence sooner." *Id.*

### Discussion

The defense motion should be denied because (1) *Brady* does not apply to the Department of Justice's internal capital case review process, and in any event, the Government has made disclosures for the defense to use in its mitigation submission; (2) the Government has set forth for the defense its theory of Tartaglione's culpability in this case and has satisfied its Rule 16 obligations; (3) the defense's request, though framed as a *Brady* request, simply seeks the identification and anticipated testimony of the Government's witnesses in support of its affirmative theory of the case, to which the defendant is not yet entitled; and (4) even if the defendant's request is properly considered a request for *Brady* material—which the Government disputes—the Government has satisfied its *Brady* obligations.

The defense frames its request as one for material to assist both in its mitigation submission to the Department of Justice ("DOJ") supporting its request that the Government not seek the death penalty, and as evidence favorable to Tartaglione as to guilt and punishment. The first part of this request has no legal basis. The defense may provide a mitigation submission to DOJ as part of that agency's internal process through which the Attorney General determines in his discretion whether to seek the death penalty. Although *Brady* indisputably applies to judicial proceedings at both the guilt and punishment phases, it does not apply to DOJ's internal process through which the agency evaluates how to exercise its prosecutorial discretion. *See United States* v. *Roman*, 931 F. Supp. 960, 964 (D.R.I. 1996) (the DOJ death penalty protocol "articulates internal administrative procedures to be followed by DOJ personnel; the protocol does not create substantive or procedural rights"); *United States* v. *McVeigh*, 944 F. Supp. 1478, 1483 (D. Colo. 1996) ("[T]he decision to seek the death penalty is a matter of prosecutorial discretion [and] [t]he [DOJ protocol does] not create any individual right or entitlement subject to the due process protections applicable to an adjudicative or quasi-adjudicative governmental action."); *see also United States* v. *Caceres*, 440 U.S. 741, 742 (1979) (in a case involving tape recordings that violated IRS regulations, finding that "violations of agency regulations disclosed by this record do not raise any constitutional questions"). In any event, the Government has provided sufficient disclosures for the defense to use in its mitigation submission to DOJ during the capital case review process. Accordingly, to the extent the defense's request focuses on DOJ's internal agency proceedings, it should be denied.

With regard to the proceedings before this Court, as set forth above, the Government has made significant efforts to inform defense counsel of the theory it anticipates presenting at trial.

October 19, 2017
Page 5 of 6

In both meetings as well as letters, the Government has set forth for defense counsel its theory of culpability as to Tartaglione, based on the evidence presently available to the Government: that Tartaglione is legally responsible for the deaths of all four individuals, but that he was not physically present when Santiago, Luna, and Gutierrez were shot and killed.  The Government has also produced voluminous Rule 16 discovery and will continue to produce any additional discoverable Rule 16 material that comes into its possession.

Having received the Government's disclosures and the discovery in this case, the defendant now requests the witness statements *supporting* the Government's theory of the case. Neither *Brady* nor *Kyles* require such a disclosure, and the cases cited by the defense do not suggest otherwise.  The evidence that the defense seeks is not *inconsistent* with guilt, but rather is evidence that the Government will offer to *prove* guilt.  The defendant's motion is, then, simply an attempt to learn of the Government's witnesses and anticipated testimony before a trial has even been scheduled in this case.  The defense is not entitled to that information at this early stage of the proceeding.  The Government will produce its witness list and § 3500 material for its witnesses on the date set by the Court in advance of trial.

Even if the Court views the defendant's application as a request for *Brady* material, however, the Government has satisfied its obligations.  The Government has provided sufficient disclosures for the defense to use any exculpatory material both at trial and at the sentencing phase of this case.  The Government has disclosed that it expects to argue at trial that Tartaglione was not present when Urbano Santiago, Miguel Luna, and Hector Gutierrez were shot and killed, and has made itself available to answer questions or discuss the Rule 16 discovery with defense counsel.  Moreover, the Government has produced ample Rule 16 discovery, including search warrant applications containing witness statements, warrant returns, surveillance video, cell site data, and phone records.  By conceding the ultimate point that Tartaglione was not present for the murders, the Government has given the defense many months before trial "to use the information with some degree of calculation and forethought" in preparing for trial.  *Leka* v. *Portuondo*, 257 F.3d 89, 103 (2d Cir. 2001).  Furthermore, as noted above, the Government will produce its witnesses' § 3500 material at a date closer to trial, which will further assist the defense in its preparation for trial.

Any additional witness statements confirming Tartaglione's absence from the bar at the time of the shootings would be cumulative without providing any new exculpatory information. Accordingly, such information is not material under *Brady*.  *See Turner*, 137 S. Ct. at 1894.  To the extent the defense seeks a precise accounting of each piece of evidence and each inference the Government has drawn to reach the ultimate conclusion, such a request goes far beyond the dictates of *Brady* and its progeny.  *See Bagley*, 473 U.S. at 675.  Indeed, in addition to the Government's disclosure letters, the evidence produced by the Government provides the defense with sufficient evidence supporting the Government's theory, including certain witness statements, surveillance video and relevant time stamps, particular cell site evidence, and toll records.[1]

---

[1] The Government has made clear that the key period during which the murders occurred is the afternoon and evening of April 11, 2016.  Such a short timeframe should be more than sufficient to direct defense counsel's focus when reviewing surveillance videos and records, and the

October 19, 2017
Page 6 of 6

The Supreme Court has made clear that exculpatory evidence is only material if it undermines confidence in the outcome of a case. *See Agurs*, 427 U.S. at 104; *Kyles*, 514 U.S. at 435; *Strickler*, 527 U.S. at 290; *Turner*, 137 S. Ct. at 1893. The Government's disclosure of its belief that Tartaglione was not present for the shootings, together with the supporting non-testimonial evidence, and applications containing summaries of some witness statements, is sufficient to satisfy this standard. Notably, other than the fact that Tartaglione left the bar, the Government has no evidence—including witness statements—that exculpate him for the four victims' deaths.[2] Accordingly, disclosure of additional witness statements on this uncontested point many months before trial is not required under *Brady* or its progeny.

As noted above, the Government further understands that it is the Court's practice to set a § 3500 disclosure schedule well in advance of trial. The Government will comply with such a schedule and will disclose § 3500 material, *Giglio* impeachment material, and marked exhibits on the date set by the Court once a trial has been scheduled in this case. Nothing more is required under *Brady* and its progeny.

Finally, to assist the Court in its consideration of this matter, the Government intends to submit to the Court a letter, *ex parte* and under seal, setting forth a summary of the evidence that arguably falls within the scope of the defense's request in advance of oral argument on this motion.

### Conclusion

For the foregoing reasons, the Government respectfully requests that the Court deny the defense's motion.

Respectfully submitted,

JOON H. KIM
Acting United States Attorney

By:   /s/ Maurene Comey
Maurene Comey
Michael Gerber
Lauren Schorr
Assistant United States Attorneys

Cc:   Counsel of record (by ECF)

---

warrant applications further identified particular phone calls and excerpts of video that support its theory.

[2] Of course, if new information becomes known to the Government that constitutes *Brady* material, the Government will promptly disclose it.