UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v.                                                          Case No. 16-CR-832 (KMK)

NICHOLAS TARTAGLIONE,                                              ORDER

*Defendant*.

KENNETH M. KARAS, United States District Judge:

Nicholas Tartaglione ("Tartaglione" or "Defendant"), a former police officer at the

Briarcliff Manor Police Department, was convicted of multiple murder counts related to the

deaths of Martin Luna, Urban Santiago, Miguel Luna, and Hector Gutierrez, as well as

Conspiracy to Distribute and Possess with Intent to Distribute Cocaine.  (*See* Am. J. (Dkt. No.

592).)  Non-Party newspaper, the New York Times (the "Times"), has filed a request to unseal

certain materials that, the Times claims, were filed in this case.  (*See* Memo Endorsed Letter

from Al-Amyn Sumar, Esq. to Court ("Times Letter") (Apr. 30, 2026) (Dkt. No. 610).)  For

reasons set forth below, the Court determines that the Times' request to unseal an alleged

"suicide note purportedly authored by Jeffrey Epstein, recovered by . . . Tartaglione, and then

reportedly submitted by . . . Tartaglione's attorneys in this case (the 'Note')," (*id.* at 1), should be

granted.  The Court reserves decision on the remainder of the Times' requests to unseal.  The

Parties—specifically Defendant's counsel and, if need be, the Government's firewall counsel—

are directed to submit proposed redactions of the *Curcio* report, transcripts of the *Curcio* hearing,

and the Court's March 1, 2021 Order, as well as any other orders related to the Court's *Curcio*

determination, and letter briefs supporting their proposed redactions, by one week from the date of this Order.

## I.  Background

In December 2016, Tartaglione was indicted on charges of Conspiracy to Distribute and Possess with Intent to Distribute Cocaine, in violation of 21 U.S.C. § 846(b)(1)(A) and four counts of Murder in Furtherance of a Drug Crime, in violation of 21 U.S.C. § 848(e) and 18 U.S.C. § 2.  (*See* Superseding Indictment (Dkt. No. 3); *see generally* Dkt.)  By way of a later superseding indictment, Tartaglione was indicted on additional charges, specifically, three counts of Murder through the Use of a Firearm, in violation of 18 U.S.C. §§ 924(j) and 2; one count of Conspiracy to Kidnap, in violation of 18 U.S.C. § 1201(c); four counts of Aiding and Abetting Kidnapping which Resulted in Death, in violation of 18 U.S.C. §§ 1201(a)(1) and 2; and four counts of Aiding and Abetting Travel Act Murder, in violation of 18 U.S.C. §§ 1952 and 2.  (*See* Second Superseding Indictment (Dkt. No. 23).)  As has been widely reported, while Defendant was awaiting trial in his criminal case, he was briefly cellmates with Jeffrey Epstein at the Metropolitan Correctional Center in Manhattan.  *See* Karen Zraick, *Police Officer With Bit Part in Epstein Jail Drama Is Convicted of Murder*, N.Y. Times (Apr. 6, 2023), https://www.nytimes.com/2023/04/06/nyregion/briarcliff-manor-police-officer-murder.html.

In the course of the criminal proceedings the Court was made aware of a potential conflict among Defendant's representation.  The Court ultimately concluded that it was appropriate to conduct a *Curcio* hearing.[1]  In advance of that hearing, the Court appointed

---

[1] The purpose of a *Curcio* hearing is to explain any potential conflicts of interest that a defendant's counsel might have, whether those conflicts are waivable, and, if so, whether the defendant wishes to continue to be represented by conflicted counsel.  *See United States v. Perez,* 325 F.3d 115, 127 (2d Cir. 2003) ("Where the defendant can rationally opt to retain counsel of

counsel ("*Curcio* counsel") to advise Defendant about the conflict and whether or not he might want to waive any such conflict. (*See* Minute Entry dated Dec. 18, 2019.) *Curcio* counsel prepared a report. (*See* Order dated Jan. 8, 2020 (Dkt. No. 179).) The Court later held a *Curcio* hearing. (*See* Order dated July 30, 2020 (Dkt. No. 237).) By Order dated May 25, 2021, the Court determined, among other things, that an attorney, John Weider, "who had been acting as one of Defendant's retained lawyers in this case, possesses an actual, unwaivable conflict of interest and must be disqualified," and "to the extent potential conflicts exist for [another retained lawyer named] Mr. Barket or any other members of his law firm, those conflicts are potential, waivable conflicts." (Order dated May 25, 2021 (Dkt. No. 260).) The Court also found that Defendant knowingly and voluntarily waived the potential conflicts of his remaining attorneys and accepted his waiver. (*Id.*)

The case proceeded to trial. The jury trial, which (along with jury selection) ran from March 13, 2023 to April 6, 2023, resulted in Defendant being found guilty of each of the above-described counts. (*See* Minute Entries dated Mar. 13, 2023 to Apr. 6, 2023; Am. J.) On June 10, 2024, Defendant was sentenced to four life sentences for the above-described counts, to run consecutively, followed by five years of supervised release. (*See* Minute Entry dated June 10, 2024; *see also* Am. J. 3.) On July 2, 2024, Defendant filed a notice of appeal from the judgment. (Not. of Appeal (Dkt. No. 596).) As of the date of this Order, Defendant's appeal remains pending at the Second Circuit, where briefing is underway. (*See* Dkt. (Dkt. No. 24-1852).)

---

his choice despite a conflict, the court conducts a *Curcio* hearing to determine whether the defendant knowingly and intelligently waives his right to conflict-free representation.").

On April 30, 2026, the Court received a request from the Times seeking certain materials that, the Times claimed, were filed under seal in the proceedings in this case. (*See* Times Letter 1–2.) The Times sought access to four sets of documents:

> (1) A suicide note purportedly authored by Jeffrey Epstein, recovered by Mr. Tartaglione, and then reportedly submitted by Mr. Tartaglione's attorneys in this case (the "Note");
> (2) The report by Bobbi Sternheim, *Curcio* counsel for Mr. Tartaglione, submitted to the Court in January 2020 (the "Report"), *see* Dkt. 179;
> (3) The transcripts of the "multi-day hearing" conducted by the Court as part of its *Curcio* inquiry (the "Transcripts"), *see* Dkt. 260; and
> (4) The March 1, 2021[] order issued by the Court following its *Curcio* inquiry, which resulted in the disqualification of one of Mr. Tartaglione's attorneys (the "March 1 Order"), along with any other rulings related to the inquiry.

(*Id.* at 1.) According to the Times, Defendant repeatedly referenced the Note in detail in interviews with the Times and "another outlet," specifically citing an interview with a popular author who publishes on the platform Substack. (*Id.* at 4–5.) The Times also points to a document released by the Department of Justice that references the Note. (*Id.* at 5–6.) According to this document, the Note predated Jeffrey Epstein's death by over a week, and predated Epstein being placed in a different cell from Defendant. (*Id.* at 11.) The Times takes the position that there is "no basis for continued blanket sealing of the requested records," because Defendant has assertedly "waived [his attorney-client] privilege, at least for certain information." (*Id.* at 6.)

The Court directed the Parties to respond to the Times Letter by May 4, 2026. (*Id.* at 10.) On May 4, 2026, the Government submitted a responsive letter, indicating that it was "unaware of the subject matter of the *Curcio* proceedings" beyond what appeared publicly on the docket.

4

(*See* Letter from Jacob R. Fiddleman, Esq. to Court (May 4, 2026) (Dkt. No. 611).)[2]  Also on

May 4, 2026, Susan Wolfe, currently serving as co-counsel for Defendant, submitted a sealed

letter to the Court, setting out Defendant's position on the unsealing request.  (*See* Sealed Letter

from Susan Wolfe, Esq. to Court (May 4, 2026).)[3]  In that letter, Defendant took the position that

any information Defendant had shared about the Note with third parties was no longer

privileged, and therefore he did not object to the Note being unsealed.  (*Id.* at 1.)  Without getting

into any specifics, Defendant did, however, raise various objections to the disclosure of certain

parts of the *Curcio* report, the hearing transcripts, and the Court's March 1, 2026 order.  (*Id.* at

1–3.)  On May 6, 2026, the Court received a reply letter from the Times in further support of

unsealing, expressing the belief that Defendant had filed no responsive letter, and taking the

position that the Court should "immediately unseal" the Note and "review[]" the remaining

---

[2] In this proceeding, the Government instituted a "firewall" team—a term that "refers to a procedure the government" uses "to ensure that no prosecutors . . . actually working on" a criminal prosecution "ha[s] access to" certain materials to preserve the integrity of the trial and prevent the prosecution team from having access to internal matters related to Defendant's representation.  *United States v. Massino*, 311 F. Supp. 2d 309, 311 n.3 (E.D.N.Y. 2004) (describing a similar firewall procedure); *see also United States v. Guzman Loera*, 24 F.4th 144, 155 (2d Cir. 2022) (describing "[f]irewall counsel" as "Government lawyers familiar with the . . . investigation, who maintained complete separation from the prosecuting lawyers" and noting Second Circuit precedent approving of the practice).  (*See also* Order dated July 27, 2020 (Dkt. No. 236) (explaining that the Court would conduct a sealed proceeding "relate[d] to sensitive, internal matters related to Defendant's representation," that would accordingly "take place ex parte and under seal, with the participation of the Government's firewall counsel").)  Multiple Assistant United States Attorneys served on the firewall team.

[3] Ms. Wolfe is directed to file a redacted version of this letter by May 13, 2026, and an accompanying letter justifying the reasons for any redactions.

records "to determine what portions are subject to continued sealing, . . . and what portions can now be released."  (Letter from Al-Amyn Sumar, Esq. to Court (May 6, 2026) (Dkt. No. 612).)[4]

## II.  Discussion

### A.  Governing Law

Determining whether the public has a right of access to documents in a case, or whether those documents may instead remain under seal, is a multi-step process governed by constitutional as well as common law.  The public has a strong presumptive right of access to certain judicial documents, established by the First Amendment, as well as a weaker presumptive right to all judicial documents, established at common law.  *See Newsday LLC v. County of Nassau*, 730 F.3d 156, 163 (2d Cir. 2013) ("Federal courts employ two related but distinct presumptions in favor of public access to court proceedings and records: a strong form rooted in the First Amendment and a slightly weaker form based in federal common law."); *United States v. Amodeo*, 71 F.3d 1044, 1047–49 (2d Cir. 1995) ("*Amodeo II*") (discussing and analyzing the presumption of access under common law).

The common law right of public access to judicial documents is one "firmly rooted in our nation's history," that provides "a measure of accountability" for federal courts and protects the public's "confidence in the administration of justice."  *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006) (citations omitted).  In deciding whether the common law right

---

[4] Although Defendant's appeal of his criminal conviction remains pending before the Second Circuit, (*see* Dkt. (Dkt. No. 24-1852)), the Court "retains residual jurisdiction over collateral matters," including sealing of docket materials, *Tancredi v. Metro Life Ins. Co.*, 378 F.3d 220, 225 (2d Cir. 2004); *see also United States v. Schulte*, No. 17-CR-548, 2024 WL 1526151, at *1 n.1 (S.D.N.Y. Apr. 9, 2024) (explaining that the district court retained jurisdiction to decide whether materials should remain sealed despite pending direct appeal of criminal conviction).

applies, the Court evaluates whether the document is a "judicial document," that is, "a filed item that is relevant to the performance of the judicial function and useful in the judicial process." *Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132, 139 (2d Cir. 2016) (quotation marks and citation omitted); *see also United States v. Greenwood*, 145 F.4th 248, 254 (2d Cir. 2025) ("The common law right of public access turns on whether the document at issue is a judicial document, to which the common law presumption applies." (quotation marks and citation omitted)).  If so, the Court determines the weight of the presumption.  *See Bernstein*, 814 F.3d at 142–43 ("Once the court has determined that the documents are judicial documents . . . it must determine the weight of that presumption.  The weight . . . is a function of (1) the role of the material . . . in the exercise of Article III judicial power and (2) the resultant value of such information to those monitoring the federal courts[.]" (quotation marks and citation omitted)); *Amodeo II*, 71 F.3d at 1049 ("As one moves along the continuum [determined by the role of the material in the exercise of Article III power and the value of such information to those monitoring the courts], the weight of the presumption declines.").  The Court then balances competing considerations—for instance, the "danger of impairing law enforcement or judicial efficiency" or "the privacy interests of those resisting disclosure"—against the presumption. *Amodeo II*, 71 F.3d at 1050.

Under the First Amendment, the right of access applies to "certain judicial documents." *Greenwood*, 145 F.4th at 255.  Courts follow two different approaches to determine whether the right applies to particular material.  *Newsday*, 730 F.3d at 164.  Under the "experience-and-logic" test, a court asks whether the documents "have historically been open to the press and general public" and whether "public access plays a significant positive role in the functioning of the particular process in question." *Lugosch*, 435 F.3d at 120 (quotation marks and citation

omitted, hyphens added).  In the alternative, a court may consider the extent to which the documents "are derived from or are a necessary corollary of the capacity to attend the relevant [court] proceedings."  *Id.* (quotation marks and citation omitted, alteration adopted).  Under either approach, if the First Amendment right applies, the party seeking to have the document sealed must demonstrate that sealing is "essential to preserve higher values and is narrowly tailored to serve that interest."  *Bernstein*, 814 F.3d at 144 (quotation marks and citation omitted).

B.  Analysis

  1.  Common Law

  As described above, the Court's analysis begins with the question whether the requested materials are "judicial documents" such that the right of access applies to them.  The Second Circuit has explained that "most material filed on a federal court's docket in the ordinary course of litigation will consist of judicial documents giving rise to a presumption of public access . . . ."  *Giuffre v. Maxwell*, 146 F.4th 165, 176 (2d Cir. 2025) (citations omitted).  Indeed, to be subject to the presumption of public access, the document need only be "relevant to the performance of the judicial function and useful in the judicial process . . . ."  *United States v. Amodeo*, 44 F.3d 141, 145 (2d Cir. 1995) ("*Amodeo I*").  The Second Circuit also recently clarified that, rather than being limited to dispositive motions, the presumption of access applies to materials submitted in connection with "motions . . . [that] call upon the [district] court to exercise its Article III powers[,]" including motions that do not bear directly on substantive rights, such as, "*inter alia*, motions to compel testimony, to quash trial subpoenae, and to exclude certain deposition testimony."  *Brown v. Maxwell*, 929 F.3d 41, 50 (2d Cir. 2019).  Indeed, "[a]ll documents submitted in connection with, and relevant to, such judicial decision-making are

subject to at least some presumption of public access." *Id.* (footnote omitted); *see also Giuffre*, 146 F.4th at 177 (noting that the Second Circuit had "extend[ed] the reasoning" of its earlier cases "to non-dispositive motions" albeit subject to a "somewhat lower" presumption of access than the presumption that applies to "material introduced at trial, or in connection with dispositive motions" (quotation marks and citation omitted)).

Accordingly, as to the Note, the Court concludes that it is subject to the presumption of public access. The Note was submitted in connection with the *Curcio* hearing, which involved the exercise of Article III power to make a determination as to Defendant's right to conflict-free counsel, and the Note was at least relevant to "judicial decision-making," regardless of whether the Court relied on it in reaching its conclusion. *Brown*, 929 F.3d at 50; *see also Giuffre*, 146 F.4th at 181 (noting that the Second Circuit's earlier rulings determined that the presumption of public access applied to the exercise of the district court's supervisory authority as well as its decisions on substantive motions); *Authors Guild v. Nat'l Endowment for Humans.*, No. 25-CV-3657, 2026 WL 412620, at *5 (S.D.N.Y. Feb. 13, 2026) ("[D]ocuments do not receive different weights of presumption based on the extent to which they were relied upon in resolving a motion, and a court may not treat the presumption as barely cognizable merely because it does not rely on them. The sole question is whether the material is relevant to the performance of the judicial function, not whether it proves outcome-determinative." (quotation marks and citations omitted)); *United States v. Correia*, No. 19-CR-725, 2020 WL 6683097, at *1 (S.D.N.Y. Nov. 12, 2020) (explaining that financial declarations "fit comfortably within the Second Circuit's capacious definition of a judicial document" as they were "relevant to th[e] [c]ourt's decision whether to grant counsel's motion to withdraw"). Accordingly, the Note is subject to a presumption of public access.

Next, the Court evaluates the weight of the presumption.  Documents submitted in connection with dispositive motions or ultimately produced at trial are subject to a "particularly strong presumption of public access" as they bear on the "[C]ourt's core adjudicative role[.]" *Giuffre*, 146 F.4th at 177, 181.  In contrast, filings that are "ancillary to the [C]ourt's core role in adjudicating a case" receive a "somewhat lower" weight that nevertheless requires "specific and substantial reasons" to justify sealing.  *Brown*, 929 F.3d at 50.  The Note, which was submitted in conjunction with a non-dispositive *Curcio* hearing, is arguably subject to a less-weighty presumption, but nevertheless a substantial one.  *See Giuffre*, 146 F.4th at 177–78 (noting the Second Circuit's recognition that some non-dispositive motions are subject to a reduced presumption of public access); *Correia*, 2020 WL 6683097, at *1 (explaining submissions would be "subject to a lesser—but still substantial—presumption of public access" where they were "related to the [c]ourt's supervision or management of counsel," and describing the resulting presumption as "moderate" in weight (quotation marks and citation omitted)).  The Court comfortably concludes that public access to the Note promotes "a measure of accountability" as well as ensures that the public will "have confidence in the administration of justice." *Lugosch*, 435 F.3d at 119 (citation omitted).

Finally, no Party has identified any competing consideration that would justify sealing the Note, let alone "considerations sufficient to overcome the . . . presumption of public access . . . ." *Slice Ins. Techs., Inc. v. Appalachian Underwriters, Inc.*, No. 24-CV-9803, 2025 WL 3677802, at *2 (S.D.N.Y. Dec. 18, 2025).  The Court agrees with the Parties' position that Defendant's repeated public discussion about the Note's contents constitutes waiver of the attorney-client privilege as to the document.  (*See* Times Letter 9; Sealed Letter of Susan Wolfe, Esq. to Court 1.)  *See also In re Horowitz*, 482 F.2d 72, 81 (2d Cir. 1973 ("[S]ubsequent

disclosure to a third party by the party of a communication with his attorney eliminates whatever privilege the communication may have originally possessed, whether because disclosure is viewed as an indication that confidentiality is no longer intended or as a waiver of the privilege." (citations omitted)).  Accordingly, sealing is not justified on that basis.

Although not raised by the Parties, the Court has identified and considered whether one other countervailing interest—the privacy interest of any third parties—supports the continued sealing of the Note.  The Court concludes that this interest does not support the Note's continued sealing.  Existing case law suggests that the privacy interests of a third party who is deceased, like Jeffrey Epstein, are vastly reduced and disclosure of the deceased's information is unlikely to "work a concrete harm."  *Breitenbach v. Sagestream, LLC*, No. 24-CV-893, 2025 WL 2923737, at *2 (E.D. Pa. Mar. 17, 2025).  Moreover, as Defendant has already repeatedly discussed the Note and its asserted contents, including in a national news outlet, (*see* Times Letter 5–6), any privacy interests are substantially lessened.  *See The Fla. Star v. B.J.F.*, 491 U.S. 524, 532 n.7 (1989) ("[P]rivacy interests fade once information already appears on the public record . . . ." (citation omitted)); *Fishon v. Peloton Interactive, Inc.*, No. 19-CV-11711, 2022 WL 7049241, at *2 (S.D.N.Y. Oct. 12, 2022) ("To the degree [the individual] has a privacy interest in th[e] public information, it is a limited one." (citations omitted)).  Finally, this is not a case where the materials sought to be disclosed name additional third parties linked to the case only through happenstance, might subject additional individuals to "pain, embarrassment, or stigma," or discuss intimate personal relationships.  *See Voice of San Diego v. Naval Crim. Investigative Serv.*, 753 F. Supp. 3d 1069, 1133–35 (S.D. Cal. 2024) (discussing these as factors that support non-disclosure in the analogous context of the FOIA).

11

As to the other materials requested by the Times, however, even assuming that all of the materials are subject to the common law right of access, the materials before the Court are insufficient to determine whether the balancing of the interests supports disclosure.  *See Brown*, 929 F.3d at 51 (explaining that a district court's blanket decisions that "privacy interests outweigh the presumption of public access in each of the thousands of pages at issue," made "without particularized review" and justification, "amounts to an abuse of discretion" (footnote omitted)).  The Parties involved in the *Curcio* hearing—namely Defendant, whose attorney-client privilege may be implicated, and the Government's firewall counsel, to the extent firewall counsel would oppose unsealing—should propose redactions to the Court and explain why these redactions are necessary to support countervailing interests, particularly any ongoing attorney-client privilege issues.  *See, e.g.*, *United States v. Shin*, No. 24-CR-693, 2025 WL 2806756, at *3 (S.D.N.Y. Oct. 1, 2025) (directing the defendant to submit proposed redactions under seal); *Sylvania v. Ledvance LLC*, No. 20-CV-9858, 2021 WL 412241, at *2 (S.D.N.Y. Feb. 5, 2021) (same); *United States v. Avenatti*, 550 F. Supp. 3d 36, 54–55 (S.D.N.Y. 2021) (delaying release of sealed materials to permit a party to propose for the court's consideration redactions consistent with the common law right of access).

2. First Amendment

Given that the interests described above are "insufficient to overcome even a modest common law presumption of access" as to the Note, "it follows that" those interests, too, would not "overcome the stronger First Amendment presumption."  *Correia*, 2020 WL 6683097, at *2. Accordingly, assuming that the First Amendment right of access applies to the Note, there is no countervailing interest sufficient to justify its continued sealing.  *See Pers. Staffing Grp., LLC v. XL Ins. Am., Inc.*, No. 22-CV-10259, 2023 WL 4304688, at *4 (S.D.N.Y. June 30, 2023) ("Here,

having concluded that the common law right of access attaches and is not outweighed by countervailing factors, the Court need not consider whether [the individuals requesting unsealing] have met the even higher standard of the First Amendment.").

As described above, the Court reserves decision as to whether the First Amendment right of access applies to the remaining requested materials and directs the Parties to submit additional briefing. To the extent that the First Amendment right of access may apply to the requested materials, the Parties are reminded that proposed redactions should be narrowly tailored to preserve higher values.

### III.  Conclusion

For the reasons set forth above, the Times' request is granted as to the Note. The Clerk of Court is respectfully directed to docket a copy of the material that was placed in the vault on May 20, 2021, and to unseal the original material placed in the vault on May 20, 2021. The Court reserves decision as to the remainder of the materials requested by the Times. The Parties—and in particular, Defendant's counsel as well as the Government's firewall counsel—are directed to submit proposed redactions as to the remaining documents requested by the Times by one week from the date of this Order.

SO ORDERED.

Dated:  May 6, 2026
        White Plains, New York

_____
KENNETH M. KARAS
United States District Judge

13