# MEMO ENDORSED

**SUSAN C. WOLFE, ESQ.**
Law office of Susan C. Wolfe
2400 Johnson Ave, Suite 1G
Bronx, York 10463

Tel:  (917) 209-0441                                          Diane Fischer,
Email:  scwolfe@scwolfelaw.com                               of counsel

May 19, 2026

Honorable Kenneth M. Karas
United States District Judge
United State District Court
300 Quarropas Street
White Plains, NY 10601

**Re:   *United States v. Nicholas* Tartaglione** 16-cr-832 (KMK)

Dear Judge Karas:

Mr. Tartaglione does not dispute that the "presumption of access" to judicial documents is strong.   Nevertheless, it is the province of the court to determine "the weight of the presumption" and "balance competing considerations against it."  *United States v. Amodeo*, 71 F.3d 1044, 1050 (2d Cir. 1995).  In this case, the principle competing interest is the attorney client privilege, one of the oldest and most venerated privileges grounded in the common law. *See Upjohn Co. v. United States*, 449 U.S. 383, 389 (S.Ct.1981).  It serves "the broader public interests in the observance of law and administration of justice" by "encourage[ing] full and frank communication between attorneys and their clients." *Id.*; *see Siedle v. Putnam Invs.* 147 F.3d 7, 12  (1st Cir. 1998**)** *(*"the interest in preserving a durable barrier against disclosure of privileged attorney-client information is shared both by particular litigants and by the public, and it is an interest of considerable magnitude. Indeed, this is precisely the kind of countervailing concern that is capable of overriding the general preference for public access to judicial records.")

Hon. Kenneth Karas
May 21, 2026
Page 2

The Second Circuit has "implied—but never expressly held—that protection of the attorney-client privilege is a '"higher value"' under the First Amendment that may rebut the presumption of access." *Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132, 145 (2d. Cir. 2016). That implication, or even treating the presumption and privilege of equal weight, means that extensive redactions are required. The *Curcio* Report and the transcripts the New York Times seeks are permeated with privileged information, on several levels:1) attorney statements attributing information to Tartaglione; 2) attorney statements without attribution but, in context, reveal that the information came from Mr. Tartaglione; 3) Mr. Tartaglione's statements, elicited during the conflict waiver inquiry, regarding conversations with his attorney, and; 4) statements by co-counsel about what his colleague said or conversations they had that involve attorney-client communications.[1]

In *United States v. Amodeo,* 71 F.3d 1044, 1052 (2d Cir. 1995), the Court identified another ground for redaction applicable in Mr. Tartaglione's case. At issue in *Amodeo* was "a redacted version of a sealed investigative report" prepared by "a Court Officer" and filed with the district court. Because the sources and much of the subject matter in a portion of the report were "shrouded by the redactions," the Report was

---

[1]     According to *Curcio* Counsel: "Counsel joined in the representation of one defendant share a single privilege which serves to protect the confidences of their mutual client. Mr. Tartaglione's communications which form the basis of developing a capital defense are subject to one single attorney-client privilege that should not exclude Learned Counsel." Sternheim Report at 13. *See Kirzhner* v. *David Silverstein*, 2011 U.S. Dist. LEXIS 40467, *4, 2011 WL 1321750

Hon. Kenneth Karas
May 21, 2026
Page 3

"more likely to mislead than to inform the public. It would circulate accusations that cannot be tested by the interested public." *Id. at* 1047.

The movant was a law firm that challenged the release of the heavily redacted version of the report, that contained allegations of Union corruption. The Second Circuit found that the unsealing of the redacted report would put the law firm "in the unfair position of choosing between suffering the accusations in silence or revealing redacted information," and reversed the unsealing order as an abuse of discretion. *Id.* at 1052-1053. ███████████████████ ███████████████████████ *Cf.* *Applications of National Broadcasting Co.,* 828 F.2d 340, 346-347 (6th Cir. 1987) (nothing in the materials sought to be unsealed was of "a derogatory or unusual nature"). [2]

## Fifth Amendment Considerations

A defendant may not be placed in a situation where he is required to give up one constitutional right in order to assert another. In *Simmons v. United States,* 390 U.S. 377, 394 (1969), the Supreme Court found it "intolerable that one constitutional right should have to be surrendered in order to assert another." The High Court there established the rule that, when a defendant testifies at a suppression hearing, asserting his Fourth Amendment rights, his testimony cannot be used against him, in derogation of his Fifth Amendment rights.

The same "intolerable" tension exists in Mr. Tartaglione's case; ███ ████████████████████████████ As in *Simmons,* no evidence supporting those allegations may be used against him.

---

[2] ████████████████████████████

Hon. Kenneth Karas
May 21, 2026
Page 4

If the Court permits unsealing to satisfy the public's right of access, effectively dissolving the "wall," it must simultaneously enter an order that nothing that occurred or was said, revealed or produced  during the sealed *Curcio* proceedings may be used by the government in any criminal prosecution of Mr. Tartaglione.[3]

Redactions

In the preface to the *Curcio* Report, Ms. Sternheim wrote:

> This Report contains highly sensitive and privileged
> information, the inclusion of which is deemed necessary
> to provide the Court with relevant background and
> sufficient facts to make critical decisions that will
> impact the rights of a capital defendant.

With that in mind, we have parsed the Report, the Court's rulings, and the transcripts to isolate references to the Note, about which Mr. Tartaglione has spoken publicly.  With respect to everything else, we must examine it all, on the levels mentioned above, for attorney-client privileged communications, which can only be done coherently but painstakingly through a privilege/redaction log.

We have conferred with the attorney for the New York Times, who appreciates the logistics involved.  With their consent, I am submitting the following subset of materials to the Court.   In each, the portions which are responsive and do not implicate the attorney-client privilege are highlighted; in one instance, a redaction is highlighted:

---

[3]    In a letter filed early this morning, AUSA Fiddelman recounts a conversation we had about an alternative to keeping the appellate record under seal.  I do not recall the conversation exactly as he does, but it is clearly worth revisiting.

Hon. Kenneth Karas
May 21, 2026
Page 5

1) Curcio Report, highlighted portions proposed for unsealing
2) Barket Ruling 5/19/2021, no redactions
3) Wieder Oral Ruling, 2/22/2021, nothing highlighted, should remain sealed until further review
4) Wieder Written Order, 3/1/202, no redactions
5) Order sealing the proceedings, 5/17/21, no redactions
6) Order re Hearing issues and scheduling, 6/12/2020, proposed redactions highlighted

At the court's direction, we will redact the documents (all but the highlighted portions) as indicated and provide them to the New York Times.

Finally, I respectfully ask the Court for a nine-hour extension of time to file this submission, *nunc pro tunc*.

Respectfully submitted,

S/
Susan C. Wolfe

Defendant has indicated to the Court that he does not oppose unsealing certain portions of this letter that were redacted in the version docketed at Dkt. No. 620. There is no opposition by the Government or any other person or entity. Accordingly, the Court determines that this updated version of the letter should be docketed to advance the public's right of access. The Clerk of Court is respectfully directed to docket this letter

So Ordered.
May 28, 2026